**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| QUANSA LESHAL THOMPSON,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL ANDERSON, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br>No. 4:17-CV-1430 AGF |

**MEMORANDUM AND ORDER**

Plaintiff Quansa Leshal Thompson, a patient at Metropolitan Psychiatric Center, seeks leave to proceed in forma pauperis in this civil action under 42 U.S.C. § 1983. Having reviewed plaintiff's motion and affidavit in support, the Court finds that plaintiff does not have sufficient funds to pay the filing fee. *See* 28 U.S.C. § 1915(b)(1). The Court will grant her motion to proceed in forma pauperis. For the following reasons, the Court will order plaintiff to file an amended complaint within twenty-one (21) days of the date of this Memorandum and Order.

**Standard of Review**

Under 28 U.S.C. § 1915(e), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id*. at 679.

When reviewing a complaint under 28 U.S.C. § 1915(e), the Court accepts the well-pled facts as true. Furthermore, the Court liberally construes the allegations.

**The Complaint**

Plaintiff brings this § 1983 action against four employees of the Metropolitan Psychiatric Center ("MPC"): Dr. Michael Anderson, the Chief Operating Officer; Dr. Roy Wilson, Director of Medicine; and Drs. Edwin Wolfgram and Bridget A. Graham, psychiatrists.

Plaintiff states that Dr. Graham misdiagnosed her with schizophrenia and other psychotic disorders using information about plaintiff publicly available on the Internet. She claims this misdiagnosis caused the State of Missouri to violate her rights to life, liberty, and property "by hindering my Due Process." Plaintiff has attached to her complaint four exhibits, including Exhibit IV, an "affidavit of rebuttal."[1] In her affidavit, plaintiff states the following regarding Dr. Graham:

> . . . It's also published that the "founders" of the republic, felt that my ancestors were so far inferior that they had no rights which a "white" man was bound to respect; even without the Supreme Court reversal, it is apparent those same inherited sentiments are extant by those like Ms. Graham who exhibits her dogmatic perspective throughout her report. Ms. Graham omitted stating in the listed source of information where she inferred her sole data drawing this erroneous inference, the internet: google, you tube, sound cloud, and other social media sites. Following our introduction, Ms. Graham immediately started asking personal evaluating questions in a condescending tone, in which I referred her to

[1] Under Rule 10(c) of the Federal Rules of Civil Procedure, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Accordingly, the statements set forth in the exhibits attached to plaintiff's complaint must be considered when assessing whether her pro se plaintiff's suit is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B). *See Morton v. Becker*, 793 F.2d 185, 187 (1986) ("[M]aterials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint.")

the letter in prebut [sic] sent to the examiner prior to the appointment. Ms. Graham acknowledged being in receipt of it (as I observed the letter on her clipboard), and reaching the theories of the debunked psychiatrist Samuel L. Cartwright's diagnosis of "Drapetomania." Neither of us expounding on the topic. So, occupying the time I commenced speaking on general yet relevant subject matters of this case. Things I often talk about to any member of the public, starting with a few events leading up to the afflictions and their effects on me emotionally, none of which she mentions. The entire "interview" was spent with me reiterating everything that had been written in motions and affidavits to the courts, and information about my musical content. I sited [sic] where these things could be found and from reading this offensive, presumptuous, demeaning, defaming, and quite painfully fabricated opinions of my adjudicative competency, it is clear her damnous opinion is concluded from published interviews, news articles, and other social media sites. Where is the equity or even the ethics in writing a "expert" opinion derived from information on ex ingenio and public forums, something any novice can do. This is mere inference-on-inference. The examiner is deficient in adeptness to judge the discretion of my actions as I asked her did she know Torah laws in which she declined. But the natural man received not the things of the spirit of YHWH (GOD): For they are foolishness unto him: neither can he know them, because they are spiritually discerned. But he that is spiritual judgeth all things, yet he himself is judged of NO MAN. For who hath known the mind of the LORD (GOD) YHWH, that he may instruct him? But we have the mind of the Messiah—1 Corinthians 2:14. Even the law of Missouri in which she practice says that ALL men have a natural and indefensible right to worship Almighty GOD according to the dictates of their consciences; that NO HUMAN "Authority" can control or interfere with the rights of consciences—Missouri Constitution Article I. Section 5. Knowing this Ms. Graham's malicious and despicable description of me as some demented, psychotic, bible toting icon who is unable to discern reality, insinuating I used jargon like Almighty GOD, the Human Realm, transition, and quite a few other aloof statements she falsely reported me making. Ms. Graham has used my circumstances to entirely distort, fabricate, and report a false testimony that my history is somehow "rooted in delusion" when in fact I have affirmative and conditional proof all events or occurrences are real. These things are documented and public information. Verily, verily, I say unto thee, we speak that we do know, and testify that we have seen; and ye receive not our witness if I have told you earthly things, and ye believe not, how shall ye believe, if I tell you of heavenly things?

During the conversation Ms. Graham initiated asking me probing evaluation questions in which I stopped her from doing. She tells me "I'm just doing my job." A position held regarded by the determining factor of the court, and with reckless knowledge of the aggravated kidnapping by cesarean is willing to break her Hippocratic oath, continuing wrong in writing a callous, malevolence, and damnous report; making false determinations of my "mental status" in order to obstruct justice by aiding and abetting in the malicious motives

> of the courts. To have respect of persons is not good: for for a piece of bread that man will transgress—Proverbs 28:23.
>
> Both "doctors," Bridget A. Graham and Adam J. Sky professional negligence has been hurtful, harmful, injurious, and damaging, to both me and my baby. Using unethical, illegal practices in coving [sic] St. Marys hospital, Children's Division, and the St. Louis County Courts to conceal the malpractice and unlawful removal of my baby. The thief cometh not but for to steal, and to kill, and to destroy. I am come that they might have life and that they might have it more abundantly—John 10:10.
>
> . . .
>
> . . . Ms. Grahams deep rooted mischief confirms with clear and convincing evidence the accuracy of prophecy, prove all things; hold fast that which is good, abstain from all appearance of evil—1 Thessalonians 5:22. From the beginning the "white" race has hated the mere existence of my nation. Is there no shame in people who can persecute, defame, conceal, injure, cut off the love, life, liberty, nourishment, knowledge, happiness, welfare, and human rights of an infant victim and her aggrieved mother deriven [sic] from envy and all for money. For the love of money is the root of ALL evil—1 Timothy 6:10. This written rant about my "perceived" accomplishments, with all its condemnation and verbal attacks on my character nothing states me ever having been harmful to the baby, myself, or others. Ms. Grahams proficiency in her profession to draw a false testimony with apparent inadequate feelings and like throughout history misdiagnosis me with the "black" disease schizophrenia, in which her or her source, the Diagnostic and Statistical Manual of Mental Disorders can't define. There is no wisdom nor understanding nor counsel against the LORD (GOD) YHWH. Receiving understanding from the creator of the heavens and the earth nor my 4.0 g.p.a. at Strayer University is nothing sort of average. Speak not in the ears of a fool: for he will despise the wisdom of thy words.—Proverbs 23:9.

Plaintiff alleges Dr. Wolfgram ordered her to be forcibly injected with antipsychotic medications and made false reports. Plaintiff states no factual allegations or direct claims against Dr. Anderson, but states he was given notice of the misdiagnosis, the forced injections, and the psychiatrists' false reports. Plaintiff states no specific claims against Dr. Wilson.

Plaintiff also alleges that on four separate dates between March 8 and April 5, 2017, while at MPC she "was held down by 8 plus men and forc[ibly] injected with Haloperidol." She does not identify these men, and they have not been named as defendants.

She claims defendants have violated her due process, equal protection, and other constitutional rights by involuntarily confining her to a mental health facility. For relief, plaintiff asks to be released from MPC either to home or to the St. Louis County Justice Center to await trial. She also seeks compensation for lost property, and $8,000,000 for each forced injection.

**Discussion**

(A) Drs. Anderson and Wilson

Plaintiff's complaint makes conclusory allegations as to the involvement of Drs. Anderson and Wilson. She alleges both doctors had notice of her misdiagnosis, and she states Dr. Anderson was "made aware of the forced injections ordered by his staff Roy Wilson, Director of Medicine, and Dr. Edwin Wolfgram." Based on plaintiff's exhibits, however, it does not appear that Drs. Anderson and Wilson were personally involved in plaintiff's care and treatment at MPC. On March 6, 2017, prior to the alleged forcible injections, Dr. Anderson was sent a copy of Grievance Officer Nina Key's response to plaintiff's grievance. The grievance response states merely that plaintiff's grievance was received, and that it related to "staff and medication." As for Dr. Wilson, plaintiff sent him a letter on February 22, 2017, again before any alleged forcible injections. In her letter, plaintiff complains about her interactions with Drs. Graham and Wolfgram, and disagrees with her diagnosis and treatment plan.

To be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of her constitutional rights. *See Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985); *see also Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001) (§ 1983 liability arises only upon a showing of personal participation by defendant); *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (liability under § 1983 requires a causal link to, and direct responsibility for, the alleged

deprivation of rights). While plaintiff sues Drs. Anderson and Wilson, she fails to clearly explain how each of these doctors is personally responsible for the alleged constitutional violations. Instead, from her exhibits, it appears plaintiff has included Drs. Anderson and Wilson because they held administrative or supervisory positions.

Because plaintiff is proceeding pro se, the Court will give her an opportunity to file an amended complaint. If she wishes to pursue § 1983 claims against Drs. Anderson and Wilson, plaintiff shall state in her amended complaint how these doctors were personally involved in or directly responsible for the incidents that deprived her of her constitutional rights. In the absence of any direct involvement by these doctors in plaintiff's care and treatment, the Court will dismiss plaintiff's claims against them.

(B) Drs. Graham and Wolfgram

While plaintiff alleges Drs. Graham and Wolfgram were involved in her care and treatment, it is unclear what allegations plaintiff brings against these two defendants. Plaintiff complains of a misdiagnosis, an involuntary confinement, and forcible injections. Her allegations are largely conclusory, except to the extent plaintiff claims Dr. Graham used improper information for her diagnosis, and it is not clear which of her treating psychiatrists she is accusing of which constitutional violation. To further complicate plaintiff's claims, she has attached Exhibit IV, an "affidavit of rebuttal," which contains rambling statements that are difficult to understand regarding Dr. Graham's interview, diagnosis, and treatment of plaintiff.

Because plaintiff is proceeding pro se, the Court will give her an opportunity to file an amended complaint. Plaintiff must prepare the amended complaint using another Court-provided form, and must follow Rules 8 and 10 of the Federal Rules of Civil Procedure. In the "Statement of Claim" section of the form complaint, plaintiff should begin by writing the defendant's name.

In separate, numbered paragraphs under that name, plaintiff should: (1) set forth the factual allegations supporting her claim against that defendant, being as specific as possible, and (2) state what constitutional or federal statutory rights that defendant violated. Plaintiff shall proceed in this manner with each defendant, separately writing each individual defendant's name and, under that name, in numbered paragraphs, the allegations specific to that particular defendant and the rights that defendant violated.

Plaintiff shall have twenty-one (21) days from the date of this Memorandum and Order to file an amended complaint. Plaintiff is warned that the filing of the amended complaint completely replaces the original. Claims that are not re-alleged are deemed abandoned. *E.g.*, *In re Wireless Tele. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [ECF No. 2] is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff shall submit an amended complaint in accordance with the instructions set forth herein within twenty-one (21) days of the date of this Memorandum and Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail to plaintiff a blank form Prisoner Civil Rights Complaint Under 42 U.S.C. § 1983. Plaintiff may request additional forms as needed.

**If plaintiff fails to timely comply with this Memorandum and Order, the Court may dismiss this action without prejudice and without further notice.**

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 25th day of October, 2017.